## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**JENNIFER MONROY,**

  **Plaintiff,**       **Case No. 2:18-cv-5638**
              **Magistrate Judge Norah McCann King**

  **v.**

**ANDREW SAUL,**

  **Commissioner of Social Security,**

    **Defendant.**

### OPINION AND ORDER

  This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Jennifer Monroy for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

### I.  PROCEDURAL HISTORY

  On February 22, 2014, Plaintiff filed an application for Disability Insurance Benefits, alleging that she has been disabled since December 31, 2013. R. 64, 74, 165–70.[2] Plaintiff's

---

[1] Andrew Saul, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

[2] Plaintiff later amended her alleged onset date to January 1, 2013. R. 126.

1

application was denied initially on April 17, 2014, and upon reconsideration on March 18, 2015. R. 98–102, 104–09. In the Notice of Reconsideration, the Social Security Administration advised, *inter alia*, that "[w]hile we do not have the sufficient vocational information to determine if you could perform any of your past work, the medical evidence prior to 12/31/12 shows you should be able to perform other work." R. 105.

Plaintiff then sought a *de novo* hearing before an administrative law judge. R. 110. Administrative Law Judge Meryl Lissek ("the ALJ") held a hearing on January 26, 2017, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 36–63. In a decision dated March 7, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 1, 2013, Plaintiff's alleged disability onset date, through September 30, 2013, the date on which Plaintiff was last insured for Disability Insurance Benefits. R. 18–25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 9, 2018. R. 1–8. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On December 7, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. ECF No. 11.[3] On March 11, 2020, the case was reassigned to the undersigned. ECF No. 20. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at \*3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at \*4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at \*4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An

award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    THE ALJ DECISION AND APPELLATE ISSUES

The ALJ found that Plaintiff was last insured for Disability Insurance Benefits on September 30, 2013. R. 20.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of January 1, 2013, through her date last insured. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post cancer and nephrectomy of left kidney; degenerative osteoarthritis bilateral knees; degenerative disc disease of the lumbar spine; and right shoulder impingement. R. 20−21. The ALJ also found that the following diagnosed impairments were not severe: Meniere's disease and reoccurrence of renal cancer. R. 21.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to sit for up to six hours and

stand/walk for up two hours throughout an eight-hour workday; lift a maximum of two pounds with her right hand and ten pounds with both hands occasionally, but only negligible weight on a frequent basis; occasionally climb stairs and do overhead work; be off task 5% of an eight hour day; she would be absent one day per month. R. 21–24. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a tester, semiconductor wafers, and that this work did not require the performance of work-related activities precluded by this RFC. R. 24–25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 1, 2013, her alleged onset date, through September 30, 2013, her date last insured. R. 25.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 15. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 19.

## IV.    DISCUSSION

### A.    Step Three

Plaintiff challenges the ALJ's finding at step three of the sequential evaluation, *i.e.*, that Plaintiff did not suffer an impairment or combination of impairments that meets or medically equals a listed impairment. *Plaintiff's Moving Brief*, ECF No. 15, pp. 12–22. Plaintiff's arguments are not well taken.

At step three, an ALJ considers whether the combination of the claimant's medically

determinable impairments meets or equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, an ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the administrative decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id*.

Listing 13.21, which addresses carcinoma of the kidneys, adrenal glands, and ureters, requires that the carcinoma be "[i]noperable, unresectable, or recurrent" or "[w]ith metastases to or beyond the regional lymph nodes." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 13.21. Here, the ALJ determined at step two that Plaintiff's severe impairments included, *inter alia*, status post cancer and nephrectomy of left kidney. R. 20. At step three, the ALJ found that Plaintiff's

"impairments, singly or in combination, do not meet or equal the regulatory requirements of any listing." R. 21.

Plaintiff criticizes this finding, arguing that the ALJ's single sentence at step three was too conclusory for meaningful judicial review and that her recurrence of renal cancer meets or medically equals Listing 13.21. *Plaintiff's Moving Brief*, ECF No. 15, pp. 12–22. Although the ALJ articulated only her conclusion at step three, *see* R. 21, her decision, taken as a whole, supports the ALJ's conclusion in this regard. *See Jones*, 364 F.3d at 505. At steps two and four, the ALJ provided a comprehensive review of the medical evidence relevant to Listing 13.21, detailing years of medical records. R. 21–24. At step two, the ALJ explained as follows:

> In April 2016, a renal mass was seen in the pancreas and the claimant was diagnosed with reoccurrence of renal cancer. It was explained that although the cancer was now in the pancreas, it was believed to be from the original kidney cancer cells. This was almost three years after the claimant's date last insured.
>
> The claimant testified that she had no problems after the surgery in 2009. She explained that she found out about the reoccurrence of cancer during a regular follow up visit. She admitted that she had no symptoms and no limitations currently from her cancer.

R. 21. At step four, the ALJ again acknowledged Plaintiff's history of cancer and nephrectomy of the left kidney in 2009, as well as the mass that was discovered in April 2016, *i.e.*, after the lapse of Plaintiff's insured status. R. 22, 24. The ALJ specifically acknowledged that the mass found in 2016 was referred to as a reoccurrence of the renal cancer:

> In 2009, the claimant was evaluated for hematuria and possible kidney stone. She was incidentally found to have left kidney mass. She underwent a left radical nephrectomy in Columbia, South America. It was reported that the tumor was confined to the kidney. Clinical notes dated January 13, 2017, from Regional Cancer Care Associates (RCCA), stated that the claimant's last CT scan was about two years earlier and was unremarkable. The claimant indicated that she had been having lower back pain and intermittent hematuria since the surgery. It was related that the claimant had been followed by orthopedics and urology and the underlying reason for back pain and hematuria was unknown. The claimant was seen regularly in follow up at Associates in Kidney Disease and Hypertension through April 2015.

The last CT scan in 2014 had been negative for a renal mass. It was reported that an April 29, 2016, CT scan showed an enhancing 27 mm mass in the uncinate process of the pancreas. On June 8, 2016, the claimant reportedly underwent an EUS guided biopsy, which showed well circumcised 2.7 cm hypoechoic mass in the head of the pancreas. A definite diagnosis could not be made. On July 8, 2016, the claimant underwent a CT guided biopsy, which showed neoplastic cells present. It was recognized that the morphology and immunoprofile were suggestive of clear cell renal cell carcinoma. It was noted that the claimant was seen on January 13, 2017, at RCCA on referral to surgery. However, the claimant refused surgery even though surgical resection of pancreatic lesion was recommended, and had a high overall survival. The claimant indicated that she had been taking natural medication and did not follow up until that day. She said she was doing well and had no specific complaints. (Exhibits 7F, 8F and 9F [R. 522–55 (records from Associates in Kidney Disease & Hypertension and Regional Cancer Care Associates)])

R. 24. This thorough review of the evidence, which makes clear that Plaintiff's renal cancer did not meet Listing 13.21 prior to the lapse of her insured status, permits meaningful review by this Court and reflects substantial evidence supporting the ALJ's decision at step three. *See Jones*, 364 F.3d at 505; *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient."); *Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008) ("Thus, an ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements."); *cf. Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) (finding ALJ's conclusory statement in step three was harmless where, "in reviewing the voluminous medical evidence available to us, we found abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence").

Plaintiff, however, contends that the ALJ should have used medical expert testimony instead of her own lay opinion to determine the precise onset date of, rather than the discovery

of, her "metastatic cancer." *Plaintiff's Moving Brief*, ECF No. 15, pp. 16–21 (citing, *inter alia*, SSR 83-20). This Court disagrees. SSR 83-20 requires an ALJ to "call on the service of a medical advisor when onset [date] must be inferred" where the Plaintiff has alleged a "slowly progressive impairment[.]" This is because "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." SSR 83-20; *see also Welsh v. Comm'r Soc. Sec.*, 662 F. App'x 105, 108 (3d Cir. 2016) ("Social Security Ruling 83-20 provides that an ALJ should enlist a medical advisor when onset must be inferred, or, in other words, when the medical evidence concerning the date on which the claimant became disabled is ambiguous."); *Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001) (reversing an ALJ's determined onset date where there existed "no legitimate basis for the conclusion of the ALJ on the onset issue" and where the ALJ chose to rely "on his lay analysis of the evidence" rather than to "call upon the services of a medical advisor," as required by SSR 83-20). Courts "have generally applied SSR 83-20, and have required the ALJ to call a medical expert, where medical evidence from the relevant period is unavailable." *Perez v. Comm'r of Soc. Sec.*, 521 F. App'x 51, 56–57 (3d Cir. 2013); *see also Yots v. Comm'r Soc. Sec.*, 704 F. App'x 95, 97 (3d Cir. 2017) (explaining that SSR 83-20 requires an ALJ to call a medical adviser where "the record contained no evidence to substantiate *or contradict* a claimant's subjective testimony as to pain and impairment") (emphasis in the original); *Klangwald*, 269 F. App'x at 205 ("[W]e have generally applied SSR 83-20 only where medical evidence from the relevant period is unavailable"); *Kirk v. Comm'r of Soc. Sec.*, 177 F. App'x 205, 208–09 (3d Cir. 2006) (distinguishing *Walton* where the plaintiff's claim of earlier onset created a time period of only three years and where medical evidence for the relevant period supported the ALJ's conclusion regarding onset date); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 549 (3d Cir.

12

2003) ("[T]he ALJ must call upon the services of a medical advisor in a situation where the alleged impairment was a slowly progressing one, the alleged onset date was far in the past, and adequate medical records for the most relevant period were not available.") (citing *Walton*, 243 F.3d at 709).

Where an ALJ "had access to adequate medical records from the time period before the expiration of [the claimant's] insured status," the ALJ is not required to obtain an expert medical opinion to determine the onset date. *Jakubowski v. Comm'r of Soc. Sec.*, 215 F. App'x 104, 107–08 (3d Cir. 2007) (distinguishing *Newell* and *Walton* and affirming denial of benefits); *see also Rodriguez v. Berryhill*, No. CV 17-6884-KM, 2019 WL 1013343, at *8 (D.N.J. Mar. 1, 2019) ("In the more usual case, however, a medical expert is not required. The Third Circuit has held that an ALJ can reasonably dete[rm]ine an onset date where the ALJ has access to adequate medical records relating to the time period before the expiration of the claimant's insured status.") (citing *Jakubowski*, 215 F. App'x at 108); *cf. Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 618 (3d Cir. 2009) ("*Walton*'s directive to seek out the services of a medical advisor is limited to situations where the underlying disease is progressive and difficult to diagnose, where the alleged onset date is far in the past, and where medical records are sparse or conflicting.").

Here, Plaintiff alleged disability since January 1, 2013, and she was last insured for Disability Insurance Benefits on September 30, 2013. R. 20, 126. The ALJ determined that Plaintiff was not under a disability under the Social Security Act at any time from January 1, 2013, through September 30, 2013. R. 25. Relying on the medical evidence, the ALJ found that the recurrence of Plaintiff's renal mass was diagnosed in April 2016, *i.e.,* long after she was last insured. R. 22, 24. Significantly, and as the ALJ also noted, Plaintiff's 2014 CT scan was

negative for a renal mass. *Id*. Although Plaintiff insists that her "silently metasticizing cancer" is the "quintessential model of a 'slowly progressing impairment' immune from lay speculation regarding its medically probable onset[,]" Plaintiff points to no medical evidence of a condition that met or equaled Listing 13.21 prior to the lapse of her insured status, nor does she explain why the present record was inadequate to support the ALJ's determination in this regard.. *Plaintiff's Moving Brief*, ECF No. 15, pp. 16−21. Adequate record evidence from the time period before the lapse of Plaintiff's insured status was therefore available and sufficient to enable the ALJ to conclude that the records did not support Plaintiff's claim that her cancer recurred prior to September 30, 2013, *i.e*., her date last insured. *See Kushner v. Comm'r Soc. Sec*., 765 F. App'x 825, 829–30 (3d Cir. 2019) ("Here, however, a wealth of medical records from the relevant period were available and included in the record. . . . Accordingly, our precedents did not compel the Commissioner to seek out a medical expert in this case."); *Jakubowski*, 215 F. App'x 107−08.

Plaintiff contends, further, that whether she "meets the cancer listings or not, this matter must be remanded for some sort of analysis of medical equivalence regarding her other impairments and that analysis must include identified listings and the elements thereof in comparison with articulated medical evidence." *Plaintiff's Moving Brief*, ECF No. 15, p. 21 (emphasis in the original). Plaintiff, however, does not identify which Listing or Listings she claims to meet, nor does she cite to any medical evidence to support this assertion. *See id*. at 21− 22. The Court will not hunt through the record to find evidence or construct Plaintiff's arguments for her. *See Atkins v. Comm'r Soc. Sec*., No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation

omitted)); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

For all these reasons, this Court concludes that the ALJ's determination at step three is supported by substantial evidence.

### B.    Step Four

Plaintiff also challenges the ALJ's determination at step four that Plaintiff's RFC enables her to perform her past relevant work. *Plaintiff's Moving Brief*, ECF No. 15, pp. 22–35. A claimant's RFC is the most that the claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). It is the ALJ who is charged with determining a claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, an ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak*, 777 F.3d at 615 (stating that the ALJ has discretion to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his

15

discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to, in an eight hour workday, sit up to six hours; stand/walk up two hours; and lift a maximum of two pounds with right hand and ten pounds with both hands occasionally and negligable [sic] weight on a frequent basis. Through the date last insured, the claimant was able to occasionally climb stairs; and could occasionally do overhead work. Through the date last insured, based on pain and memory problems, the claimant would be off task 5% of an eight hour day and absent one time per month.

R. 21. Relying on vocational expert testimony, the ALJ went on to conclude that, through the date on which she was last insured, Plaintiff was capable of performing her past relevant work as a tester of semiconductor wafers, which required sedentary exertion and which did not require the performance of work-related activities precluded by her RFC. R. 24−25. In so concluding, the ALJ specifically noted that Plaintiff performed the job of semiconductor wafer tester at a light exertional level. R. 24.

Plaintiff challenges the ALJ's determination in this regard, arguing that the ALJ and the vocational expert mischaracterized her past relevant work of clean room specialist (light exertional work), which was not listed in the Dictionary of Occupational Titles ("DOT"), and instead characterized her past relevant work as a semiconductor wafer tester (sedentary work). According to Plaintiff, the ALJ improperly based the denial of benefits on this error when she concluded that Plaintiff could perform this past relevant work as a semiconductor wafer tester as it is generally performed (sedentary), and not as actually performed by P (light). *Plaintiff's Moving Brief*, ECF No. 15, pp. 22−34. Plaintiff goes on to argue that her job duties as a clean room specialist that Plaintiff  described are actually captured by another DOT listing, *i.e.*, a

16

wafer substrate tester, which requires light exertion and which Plaintiff's RFC for sedentary

exertion precludes. *Id*. at 32–34. Plaintiff also observes, correctly, that she and her counsel

insisted at the hearing that she was a clean room specialist, not a semiconductor wafer tester, and

that she also raised this error with the Appeals Council. *Id*. at 24–26. Defendant, for his part,

insists that the ALJ did not err when she relied on the vocational expert's testimony to find that

Plaintiff's past relevant work was properly characterized as a semiconductor wafer tester and that

her RFC permitted her to perform that job as it is generally performed (sedentary). *Defendant's*

*Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19, pp. 10–11. Plaintiff's arguments are not

well taken.

At step four, "[t]he claimant bears the burden of demonstrating an inability to return to

her past relevant work." *Plummer*, 186 F.3d at 428. "Past relevant work is work that [the

claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted

long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). The ALJ considers

whether the claimant has the RFC to perform her past relevant work. 20 C.F.R. §

404.1520(a)(4)(iv). In making this assessment, the ALJ must do three things:

> (1) the ALJ must make specific findings of fact as to the claimant's residual
> functional capacity; (2) the ALJ must make findings of the physical and mental
> demands of the claimant's past work; and (3) the ALJ must compare the residual
> functional capacity to the past relevant work to determine whether claimant has the
> level of capability needed to perform the past relevant work.

*Garibay v. Comm'r of Soc. Sec*., 336 F. App'x 152, 158 (3d Cir. 2009) (quoting *Burnett*, 220

F.3d at 120). SSR 82-62 identifies the evidence that the ALJ should consider in making this

determination, particularly the claimant's statements about past work:

> The claimant is the primary source for vocational documentation, and statements
> by the claimant regarding past work are generally sufficient for determining the
> skill level, exertional demands and nonexertional demands of such work.
> Determination of the claimant's ability to do PRW requires a careful appraisal of

17

> (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62; *see also Garibay*, 336 F. App'x at 158.

When evaluating vocational evidence, an ALJ should determine whether "the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it" or whether "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61. In connection with this latter consideration, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job, but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.*

Here, Plaintiff testified about her past relevant work, explaining her prior job duties as follows:

Q Okay. In 2003, you worked for Tyco Electronics?

A Yes.

Q What did you do for them?

A I was a clean room specialist.

Q What kind of room?

A Clean room.

Q Clean room.

A Specialist. They make those wafers and they make microchips from them. The company used to make receivers and transmitters. It was a very skilled job.

18

Q Okay. You worked for Tyco, okay, in 2002 and 2001 as well, doing the same job. Is that what you're saying?

A Yes.

R. 44–45.

Q Did you have any questions for the claimant about her past work before we proceed?

A [VOCATIONAL EXPERT] Your Honor, I do have a question of clarification with regards to the position at Tyco. My question is whether or not the individual was she involved with actual assembling of the wafers?

CLMT: I have to cut them in little pieces we call scribe (PHONETIC), picking 100 out of--

ALJ: Baking?

CLMT: Picking.

ALJ: Oh, picking.

CLMT: Picking samples to send to the x-ray to see how different there's lot of chemicals, stay correctly in the wafer. And then, we had to put them in little boxes. So I had to pick up tiny parts and put them in boxes, like 100 in each box.

ALJ: Okay.

CLMT: Yeah.

ALJ: Does that do it for you, Mr. Pearson, or you need something else?

VE: Just to make sure I understood, so the counts it was more like a tester. You were testing or inspecting things, the wafers then?

CLMT: Yes. Uh-huh.

ALJ: Yes. She's shaking her head yes. He can't see you shaking your head.

CLMT: Oh, yes.

ALJ: You need to—

VE: Your Honor, I believe I have adequate information then. Thank you.

19

R. 46–47.

The ALJ then questioned the vocational expert about a DOT classification for this past

relevant work:

> Q Okay. And then Tyco Electronics?
>
> A The Tyco Electronics, I would classify as a tester, semiconductor wafers.
>
> Q Okay. Just a second.
>
> A And that is as DOT 726—
>
> Q Wait one--I'm sorry. Wait one moment. Semiconductor wafers?
>
> A Wafers.
>
> Q Okay. And what's the DOT number?
>
> A 726.684-102. That is considered a semiskilled job, SVP: 3 and it is rated at the sedentary level of exertion.

R. 47–48.

At the hearing, Plaintiff's counsel examinee the vocational expert on this point, clarifying

the difference between a clean room specialist and semiconductor wafer tester and the exertional

level of work as performed by Plaintiff:

> Q Mr. Pearson, the claimant in her report indicated that she was on her feet all day doing that job. And again, it was she -- is there a difference between the job of clean room specialist and the tester, semiconductor wafers?
>
> A The clean room specialist involved with electronics is usually somebody involved with semiconductor wafer production in the electronics industry. And actually, I did not see where that was noted in the file about the walking and standing. At the end of it, if she was indeed on her feet four to six hours per day, then I would probably say as performed it was performed in the light range.
>
> Q All right. Thank you.

R. 48.

ALJ: Okay, Counsel. Do you have questions for the VE?

ATTY: Yes.

BY ATTORNEY:
Q Mr. Pearson, just once again want to clarify the requirements of the tester, semiconductor wafers. So the DOT indicates this is a sedentary job. So is that meaning the claimant is seated at a table or a bench throughout the workday?

A I'm sorry. I didn't understand that.

Q If the semiconductor job is listed as sedentary in the DOT, does that mean that the worker is seated at a bench or a table throughout the entire workday?

A It would mean the individual is going to be seated most of the day. And there's most likely going to be some walking and standing involved in these positions, especially in the clean room positions. But overall, the majority of the day is going to be required sitting, and that's per the DOT.

Q And there is no separate job title for clean room specialist?

A There's no exact title for a clean room specialist. Essentially that ends up, like I mentioned before, usually in the electronics industry, somebody working semiconductor wafers, which I do believe the individual testified to today.

R. 59–60.

The vocational expert specifically testified that Plaintiff, with the RFC ultimately assessed by the ALJ, could perform the job of semiconductor wafer tester as that job is generally performed in the national economy, *i.e.*, at the sedentary level. R. 57–58.

In light of this testimony, this Court concludes that the issues of how to characterize Plaintiff's past relevant work and whether she could perform her past relevant work were fully elucidated at the hearing. R. 44–60. In classifying Plaintiff's past relevant work as a clean room specialist, which has no listing in the DOT, as a semiconductor wafer tester, the vocational expert relied on Plaintiff's own testimony describing her job duties, particularly her testimony that she tested or inspected wafers for an electronics company. R. 44–47; *see also* SSR 82-62 (stating, *inter alia*, that "[t]he claimant is the primary source for vocational documentation"). The

21

vocational expert explained that he had all the information necessary to formulate his expert opinion on these matters. The ALJ's reliance on the vocational expert's testimony in this regard and her ultimate determination, *i.e.,* that Plaintiff retains the RFC to perform her past relevant work as a semiconductor wafer tester as it is generally performed at the sedentary level, therefore enjoys substantial support in the record. *See* SSR 82-62; SSR 82-61 (providing, *inter alia*, that the ALJ should find the claimant "not disabled" if the claimant "can perform the functional demands and job duties as generally required by employers throughout the economy"); *Garibay*, 336 F. App'x at 159‒60 (concluding at step four that while the ALJ erred in finding that the claimant could perform her past relevant work as actually performed, substantial evidence in the record supported the ALJ's finding that the claimant had the RFC to perform the work as it was generally performed); *Bobe v. Comm'r of Soc. Sec.*, No. CV 17-8374, 2018 WL 6649737, at *6 (D.N.J. Dec. 19, 2018) (finding that "the ALJ properly concluded the disability test at step four upon finding that Plaintiff 'is able to perform [the job] as generally performed' even though the "Plaintiff may have exceeded the sedentary exertional level at her prior job") (citing SSR 82-61).

Plaintiff points to a letter that she sent to the Appeals Council after the ALJ issued her decision on March 7, 2017, arguing that this statement regarding her job duties confirms that the vocational expert did not properly classify her past relevant work as a semiconductor wafer tester. *Plaintiff's Moving Brief*, ECF No. 15, pp. 25‒28 (citing, *inter alia*, R. 164).[4] In its Notice

_____

[4] Plaintiff's letter regarding her job duties reads in pertinent part as follows:

> The ALJ decision issued on March 7, 2017 finds that I am limited to sedentary work and can still perform work as a tester, semiconductor wafers. This was not my job, however. There were people at my place of work who had the job of testing the semiconductors but that I was not one of them. My job was as a clean room specialist. It consisted of performing three tasks: (1) I would receive a batch of wafers and I had to clean them with a special chemical. I did that standing up; (2) I would place the wafers onto a ring. That was also done standing; and then (3) I

dated February 9, 2018, the Appeals Council advised that it had specifically considered Plaintiff's letter and her reasons that she disagreed with the ALJ decision, but found that "the reasons do not provide a basis for changing the Administrative Law Judge's decision[,]" "found no reason under our rules to review the Administrative Law Judge's decision[,]" and, "[t]herefore, we have denied your request for review." R. 1, 4 (listing as an exhibit Plaintiff's request for review of hearing decision/order and her correspondence letter received on May 8, 2017). As discussed at the beginning of this Opinion and Order, the ALJ's decision on March 7, 2017, therefore became the final decision of the Commissioner of Social Security when the Appeals Council declined review. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000) ("But if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision."). For the reasons noted above, the ALJ's decision at step four regarding Plaintiff's past relevant work, which was based on expert vocational testimony that, in turn, relied on Plaintiff's own description of her job duties, is supported by substantial evidence.[5]

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

---

would look at the wafers through a microscope and break them into many small chips. This task was also done standing. Clearly, did not have a sedentary job at any time in the relevant past.

R. 164.

[5] The Court notes that Plaintiff, in a footnote, refers to the denial of her request for reconsideration dated March 18, 2015, which states in part that "[w]hile we do not have sufficient vocational information to determine if you could perform any of your past work, the medical evidence prior to 12/31/12 shows you should be able to perform other work." R. 105; *see also Plaintiff's Moving Brief*, ECF No. 15, p. 25 n.5. This denial, however, is completely irrelevant to this Court's review of the Commissioner's final decision; this denial relates to the denial of reconsideration at an earlier stage of the administrative review process and is dated nearly two years before the ALJ issued her decision. *See* R. 104–08; *compare* 20 C.F.R. § 404.900(a)(2) (addressing reconsideration of the initial administrative determination), *with id.* at § 404.900(a)(4) (addressing review by the Appeals Council of the ALJ's decision).

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  August 4, 2020                             *s/Norah McCann King*
                                                  NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE